## Spiegel, Guardian, v. Magill.

*John C. Blackburn* and *H. H. Dinsmore,* for plaintiff.
*Scott Fink* and *Smith, Best & Horn,* for defendant.

WHITTEN, J., August 20, 1930.—December 3, 1928, the above action in trespass was instituted to recover damages from the defendant in the sum of $20,000 by reason of personal injuries suffered by Rose Spiegel August 30, 1928.

It appears from the record at No. 845, November Term, 1928, that upon petition filed October 15, 1928, the court, after hearing, to wit, November 21, 1928, entered a decree appointing J. L. Spiegel as guardian of Rose Spiegel, a weak-minded person, by virtue of the Act of May 28, 1907, P. L. 292.

In the plaintiff's statement of claim, filed December 3, 1928, it is averred that on August 30, 1928, the plaintiff was of sound mind and in good health; that on the date aforesaid the said Rose Spiegel, while riding as a passenger in a taxicab owned and operated by the defendant, was seriously and permanently injured in body and mind by reason of the negligent operation of the said taxicab by the defendant's employee; and that by reason of such injuries the plaintiff was obliged to expend large sums of money for medical attention, hospital care and nursing in endeavoring to cure and alleviate said injuries.

December 6, 1928, the defendant caused an appearance to be entered for him by his counsel.

February 13, 1929—no affidavit of defense having been filed by the defendant—plaintiff's attorney filed a præcipe directing the prothonotary to place the case upon the issue docket. Later the court placed the said case upon the trial list for May Term, 1929.

May 28, 1929, on motion by defendant, the court continued the case by reason of the absence of defendant's counsel.

The case was again placed upon the trial list of November Term, 1929.

November 14, 1929, plaintiff's counsel filed with the prothonotary a præcipe as follows: "And now, to wit, November 6, 1929, the plaintiff suggests the death of the said Rose Spiegel, *alias dictus* Rosella Spiegel, and substitutes on

the record as plaintiff the personal representative of her estate John C. Blackburn, administrator *c. t. a.* H. H. Dinsmore."

November 14, 1929, the plaintiff filed an amendment to the statement of claim, averring, *inter alia*, the death of Rose Spiegel on September 3, 1929.

December 6, 1929, the defendant presented his petition to the court, alleging (a) the institution of this suit on December 3, 1928; (b) the death of Rose Spiegel September 3, 1929; (c) that the filing of the præcipe November 6, 1929, and the filing of the amended statement on the same day was without authority and without notice to the defendant; (d) that Rose Spiegel had brought no suit for damages in her lifetime and that there was no authority for the addition of her personal representative as use plaintiff in the said suit and praying that a rule be granted upon John C. Blackburn, administrator, and on J. L. Spiegel, guardian of Rose Spiegel, to show cause (1) why the suggestion of the death of Rose Spiegel and the addition of John C. Blackburn, her administrator, as use plaintiff, should not be stricken off, and (2) why a judgment of non pros. should not be entered for want of a proper plaintiff to prosecute such action.

December 6, 1929, the court granted the rule prayed for.

December 9, 1929, John C. Blackburn, administrator of Rose Spiegel, made answer to the said rule, *inter alia*, that: (1) Leave of court was obtained to file the amendment to the plaintiff's statement of claim—of which the defendant had due notice; (2) Rose Spiegel in her lifetime, by her guardian, brought the original action for compensation for personal injuries to her occasioned by the negligent acts of the defendant and after her death John C. Blackburn, her administrator, was substituted on the record in order to proceed with the trial of the case.

The defendant alleges, in support of his motion for judgment of non pros., that Rose Spiegel did not in her lifetime file or cause to be filed any suit or action against the defendant.

In other words, defendant's learned counsel contend that an inspection of the record in this case discloses that the suit in the instant case was only an action by J. L. Spiegel, guardian of Rose Spiegel, a weak-minded person, to recoup moneys expended by the guardian on behalf of his ward; that Rose Spiegel was not joined as a party plaintiff; and that there is no averment in the declaration to support a claim for damages on behalf of said Rose Spiegel in her lifetime.

Turning to the record, it appears that the plaintiff is "J. L. Spiegel, guardian of Rose Spiegel, *alias dictus* Rosella Spiegel, a weak-minded person."

The cause of action alleged is personal injury to Rose Spiegel produced by the negligent acts of the defendant, which negligent acts occurred before the appointment of J. L. Spiegel as guardian of Rose Spiegel.

It is averred in plaintiff's declaration, *inter alia*, that:

"By reason whereof, the said Rose Spiegel, *alias dictus* Rosella Spiegel, has sustained serious and permanent injuries, to wit, her head, face and arms were cut, her head, face, back and hips were bruised, and she sustained such a severe shock or blow on her head that her brain was permanently injured and her mind is completely destroyed, and she was permanently incapacitated from following her usual occupation, and she has endured great pain and suffering, and will continue to endure great pain and suffering.

"The plaintiff has been obliged to spend large sums of money for medicines and medical attention, hospital care and nursing, in endeavoring to cure and alleviate the said injuries.

"Plaintiff claims damages in the sum of $20,000."

In the amended statement of claim filed November 14, 1929, there are the following additional averments, viz., (a) that by reason of her injuries, Rose Spiegel "continued to endure great pain and suffering until the 3rd day of September, 1929, when, as a result of her injuries aforesaid, she died;" and (b) that the plaintiff has been obliged to spend large sums of money for funeral expenses after her death.

Thus, it appears that the basis of this suit is a physical injury to Rose Spiegel, caused by the negligence of the defendant, and that the injury occurred August 30, 1928; that after the occurrence of such injury (October 15, 1928), a petition was presented to the court for the appointment of a guardian for Rose Spiegel under the provisions of the Act of 1907, that on November 21, 1928, J. L. Spiegel was appointed as her guardian, and that on December 3, 1928, this action was instituted as aforesaid.

Of course, Rose Spiegel could not institute an action at law after the appointment of J. L. Spiegel as her guardian.

The Act of May 28, 1907, P. L. 292, section six, provides that "The guardian, so appointed, shall have precisely the same powers, and be subject to the same duties, as a committee on lunacy in the State of Pennsylvania. The court appointing such guardian shall have full power over the same . . . "

Section twenty of the Act of June 13, 1836, P. L. 589, relating to lunatics and habitual drunkards, provides that the committee of the estate of every person found to be a lunatic, etc., "shall have the management of the real and personal estate of such person, and shall from time to time, apply so much of the income thereof as shall be necessary to the payment of his just debts and engagements, and the support and maintenance of such person, and of his family, and for the education of his minor children."

In Shaffer v. List, Committee of Shaffer, 114 Pa. 486, it was held that an action of ejectment could not be maintained by the committee of a lunatic to eject his wife and his children from the home provided by him for them while sane. In that case, the title in fee to the realty in question was in the lunatic. However, in the above case, the Supreme Court (page 489) said: "The committee is the mere bailiff or servant of the court, and as such is subject to its direction in everything that pertains to the management of the lunatic's estate, and the maintenance of him and his family. He may undoubtedly maintain ejectment against a stranger to secure possession of the lunatic's real estate; but, we are not aware that ejectment, against the lunatic's wife, for the purpose of ejecting her and his children from the home he provided for them, has ever been sanctioned. . . ."

Defendant's learned counsel object to the form of the action and pleadings and contend—as we understand their contention—that the caption of the case should be—"Rose Spiegel, alias dictus Rosella Spiegel, a weak-minded person, by her guardian, J. L. Spiegel, v. David R. Magill, trading and doing business as Magill's Motor Bus & Taxi Company."

However, this objection was not raised by the defendant until more than one year after the plaintiff's suit was brought. In the meantime, the case had twice been placed on the trial list by order of the court, and was once continued on motion of the defendant by reason of the absence of one of the defendant's counsel. The defendant now contends that it is now too late for the plaintiff to amend the record or the pleadings. The question of the plaintiff's right to amend will be discussed later.

The record in this case, including the plaintiff's statement of claim, clearly discloses that: (a) At the time the action was commenced, Rose Spiegel was a weak-minded person within the scope of the Act of 1907, P. L. 292, and the

court had appointed J. L. Spiegel as her guardian; (b) the basis of the plaintiff's claim was physical injury to Rose Spiegel caused by the negligent acts of the defendant, which negligent acts occurred before the appointment of J. L. Spiegel as guardian of Rose Spiegel; (c) by reason of defendant's negligent acts, Rose Spiegel had sustained serious, permanent injuries to her head, face, arms, back, etc.; her brain was permanently injured and her mind completely destroyed, whereby she was permanently incapacitated from following her usual occupation, and she had endured great pain and suffering, and would continue to endure great pain and suffering; also "the plaintiff had been obliged to spend large sums of money for medicines and medical attention, hospital care and nursing, in endeavoring to cure said injuries;" and "the plaintiff claims damages in the sum of $20,000."

"Where the plaintiff in an action for personal injuries died before trial, his personal representatives may be substituted as party plaintiff and may prosecute the action for the benefit of the decedent's estate:" Lhota v. Oppenheimer & Co., 247 Pa. 280. In the above case the court (page 282) said: "If the action brought by the deceased is continued, it is for the benefit of his estate and the measure of damages is the loss sustained by him."

"Under the Act of April 15, 1851, P. L. 669, where a person institutes an action to recover damages for personal injuries caused by the negligence of defendant, but dies before the case is called for trial, the executors or administrators of the deceased may be substituted as plaintiffs, and prosecute the suit to final judgment and satisfaction:" Birch et al., Executors, v. Railway, 165 Pa. 339. "The eighteenth section of the Act of April 15, 1851, P. L. 669, was neither repealed nor modified by the Act of April 26, 1855, P. L. 309, and an action instituted to recover damages for personal injuries caused by negligence on the part of the defendant survives the injured party, and can be prosecuted to final judgment and satisfaction by the personal representative of the deceased plaintiff.

"The right of action for the death of a person injured by negligence or violence of another, given by the nineteenth section of the Act of April 15, 1851, is conditioned upon two concurrent facts, (1) that the injured party's death was occasioned by violence or negligence, and (2) that no suit had been brought by the party injured to recover damages in his lifetime:" Taylor's Estate, 179 Pa. 254.

"Section eighteen of the Act of April 15, 1851, P. L. 669, which was enacted to enforce article III, section 12 of the constitution, and which provides for the survival of actions in negligence cases where the plaintiff dies, has not been either expressly or by implication repealed or modified by subsequent legislation:" Maher v. Phila. Traction Co., 181 Pa. 391.

"Where a passenger injured on a railroad dies more than a year after the accident, and it appears that he had an attack of grippe a month before he died, but the evidence shows that he had never recovered from the effects of his injuries; that they were apparently internal, and indicated a serious derangement of the liver before he had grippe, the question of the proximate cause of the death is for the jury under careful instructions.

"Where a person injured by the negligence of another has brought an action and died, the action may be continued by his executor or administrator for the benefit of his estate, under section 18 of the Act of April 15, 1851, but no new action can be brought by persons entitled to sue under section 19 of the act. If the action is continued, the measure of damages is the loss which the deceased sustained by reason of his injuries. No damages can be recov-

ered for the loss which other persons sustained by reason of his death:" McCaffrey v. Pennsylvania R. R. Co., 193 Pa. 339.

"When an action has been brought in his lifetime, by an injured party, to recover for the injuries received, the damages recoverable by his personal representative in case of his death before his action is completed, should be the same as he could have recovered had death not ensued:" McCullough v. Phila., Newtown & N. Y. R. R. Co., 81 Pa. Superior Ct. 318.

The plaintiff's original declaration is sufficient to support a claim for damages in behalf of Rose Spiegel in her lifetime. There is an averment of serious physical injuries, which injuries are alleged to be permanent; that by reason of such physical injuries, Rose Spiegel's mind is completely destroyed; that she is permanently incapacitated from following her usual occupation, and that she has endured great pain and suffering and will continue to endure great pain and suffering: Goodhart v. Pennsylvania R. R. Co., 177 Pa. 1.

If in the caption of the case the plaintiff had been designated as "Rose Spiegel, alias Rosella Spiegel, a weak-minded person, by her guardian, J. L. Spigel," instead of "J. L. Spiegel, guardian of Rose Spiegel, alias dictus, Rosella Spiegel, a weak-minded person," there could be no objection even to the form of the action. However, it clearly appears that, in the circumstances, the action could not have been instituted by Rose Spiegel. It was necessary that her guardian institute the action. It is also clear that the compensation claimed is for injury to Rose Spiegel in her lifetime, and not to recoup moneys expended by the guardian on behalf of his ward.

However, the guardian and the ward are both named as plaintiffs. The object of the suit, as disclosed by the record, is perfectly plain. The legislature has not prescribed the exact verbiage to be employed in instituting such a suit.

"If a statement of claim does not conform to the provisions of the Practice Act of May 14, 1915, P. L. 483, the defendant should move to strike it off, as provided by section 21 of the Act.

"If a statement of claim does conform to the provisions of the Act of 1915, but is not sufficiently specific, the appropriate remedy is a rule for a more specific statement followed by a motion for a non pros, if the court makes the rule absolute and its order is not complied with.

"The question to be decided, under section 20 of the Act of 1915, is not whether a statement is so clear in both form and specification as to entitle plaintiff to proceed to trial without amending it, but whether upon the facts averred it shows, as a question of law, that plaintiff is not entitled to recover.

"Where a doubt exists as to whether or not summary judgment should be entered, this should be resolved in favor of refusing to enter it:" Rhodes v. Terheyden et al., 272 Pa. 397.

In the above case the court (page 402), overruling objections to the form of the pleadings, said: "Any other conclusion would be a reversion to the practice—common in ancient days, but happily not now—of making the rights of litigants depend on the skill of the pleader rather than on the justice of their claims."

"In an action brought by a father against a railroad company to recover damages for the death of his minor son, the record may be amended after the period of the statute of limitations, so as to make the mother a party plaintiff:" Holmes v. Pennsylvania R. R. Co., 220 Pa. 189.

"An amendment which does not change the cause of action or introduce a new case may be made after the statute of limitations has run:" Lehigh National Bank v. Seyfried et al., 283 Pa. 1.

"The Supreme Court has power to allow amendments to accurately state the capacity in which litigants appeal, and will do so whenever the error arose through inadvertence, and the amendment is necessary in order to do justice as between the parties:" Kaufmann's Estate, 293 Pa. 73. In the above case the Supreme Court (page 81) expresses the rule touching amendments thus: "In a court of first instance, preparatory to a trial of the issue raised, the capacity in which a plaintiff sues is a matter of importance, because it is a necessary factor in determining what the issue really is. Hence it directly affects the cause of action, and an amendment changing it will not be allowed if the statute of limitations would bar the claim, were a suit then brought in the new capacity: Wright v. Eureka Tempered Copper Co., 206 Pa. 274; Mumma v. Mumma, 246 Pa. 407. But 'the test is the cause of action, not the statute of limitations' (Smith v. Bellows, 77 Pa. 441, 447; Wolf v. Wolf, 158 Pa. 621, 631); and if the cause is not changed, the fact that the statute would bar a new action, will not prevent an amendment by adding another party as plaintiff (Holmes v. Penna. R. R. Co., 220 Pa. 189; McArdle v. Pittsburgh Rys. Co., 41 Pa. Superior Ct. 162), or by changing the capacity in which the plaintiff sues: Power v. Grogan, 232 Pa. 387, 397.''

The court is of the opinion that in the instant case the plaintiff's cause of action is the alleged negligent act of the defendant whereby Rose Spiegel was physically injured so that she was permanently incapacitated to follow her usual occupation, enduring pain and suffering, and was obliged to expend money to alleviate her injury. The court is further of the opinion that the rule to show cause granted at the instance of the defendant should be discharged.

Moreover, the delay on the part of the defendant in raising the issue now before the court indicates that the defendant considered that a statutory demurrer would not prevail. Statutory demurrers should be filed promptly: Duggan v. Duggan, 291 Pa. 556.

The court does not now decide, and is not now required to decide, whether the plaintiff's administrator would be entitled to recover compensation for the expenses of the burial of Rose Spiegel. The plaintiff's declaration contains some averments which, if proved, would entitle the plaintiff to recovery.

The Act of April 26, 1855, P. L. 309, entitled "An Act Relating to Damage for Injuries Producing Death," provides: "That the declaration shall state who are the parties entitled in such action; ,the action shall be brought within one year after the death, and not thereafter." See, also, Prettyman v. Irwin, 273 Pa. 522, 525.

Section eighteen of the Act of April 15, 1851, P. L. 669, provides: "That no action hereafter brought to recover damages for injuries to the person by negligence or default, shall abate by reason of the death of the plaintiff; but the personal representatives of the deceased may be substituted as plaintiff, and prosecute the suit to final judgment and satisfaction."

In the instant case, defendant's learned counsel contend (a) that the cause of action was changed by the substitution of J. C. Blackburn, administrator of Rose Spiegel as plaintiff; and (b) that the statute of limitations has barred such amendment.

However, the court is of the opinion that the cause of action was not changed by such amendment.

The court also is of the opinion that since Rose Spiegel died September 3, 1929, the statute of limitations would not begin to run until after the date of her death.

572

However, if the statute of limitations should be considered as beginning to run from the date when Rose Spiegel was injured, we are of the opinion, as above stated, that the amendment made in the instant case must be allowed. In other words, if necessary, the record may be amended so that the plaintiff shall be "Rose Spiegel, *alias dictus* Rosella Spiegel, a weak-minded person, by her guardian, J. L. Spiegel." "It is a mistake to bring an action in the name of an attorney in fact; but the judgment will not be reversed for that reason, as it is amendable in the court below or in the Supreme Court:" Adams et al. *v.* Edwards et al., 115 Pa. 211; Kaylor *v.* Shaffner, 24 Pa. 489; Clifford *v.* Insurance Co., 161 Pa. 257.

In Jamieson *v.* Capron, 95 Pa. 15, the court (page 19) said: "The three plaintiffs who originally sued in this case were in fact heirs at law of Stephen Duncan, deceased, and the mistake that appears to have been made was in styling them executors instead of heirs; and that was clearly amendable. There was no change in the cause of action."

True, J. L. Spiegel, guardian of Rose Spiegel, did not procure leave of court to institute this action. But if that be necessary, the court could and should enter a decree approving such action on the part of J. L. Spiegel, guardian of Rose Spiegel.

### Decree.

And now, August 20, 1930, after argument by counsel, and upon due consideration, the rule heretofore granted December 6, 1929, is hereby discharged.

From William S. Rial, Greensburg, Pa.